IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN THOMAS RENTZ, )<br>)<br>    Plaintiff, )<br>)<br>  v. )<br>)<br>Frank J. Bisignano, *Commissioner of the* )<br>*Social Security Administration*;[1] )<br>)<br>    Defendant. | Civil Action No. 24-1293 |

**MEMORANDUM AND ORDER OF COURT**

AND NOW, this 2nd day of September 2025, having considered the parties' cross-motions for summary judgment, the Court will **AFFIRM** the Commissioner of the Social Security Administration's ("Commissioner") final decision denying Brian Thomas Rentz's ("Rentz") claims for disability insurance benefits and supplemental security income because the Commissioner's findings are supported by substantial evidence. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) ("On judicial review, an ALJ's factual findings … 'shall be conclusive' if supported by 'substantial evidence.'" (quoting 42 U.S.C. § 405(g))).[2]

---

[1] Frank J. Bisignano was confirmed as the Commissioner of the Social Security Administration on May 6, 2025. His substitution is automatic pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] The Commissioner's final decision—*i.e.*, the decision under review in this matter—is the Administrative Law Judge's ("ALJ") decision. (Docket No. 4-2 at 18-25). After reviewing the record and hearing Rentz and a Vocational Expert's ("VE") testimony at a hearing, the ALJ concluded that Rentz was not disabled for purposes of obtaining disability insurance benefits or supplemental security income. (*Id.* at 25). Rentz filed a Complaint before this Court to challenge that decision (Docket No. 3), and Rentz and the Commissioner have now filed cross-motions for summary judgment by which Rentz seeks reversal and the Commissioner seeks affirmance of the underlying disability determination and denial of benefits.

In his written decision, the ALJ went through the Social Security Administration's five-step sequential evaluation process for determining disability. (Docket No. 4-2 at 19). The ALJ found that: (1) Rentz had not engaged in substantial gainful activity since August 1, 2019 (his alleged onset date); (2) Rentz has three severe impairments, **major depressive disorder**, **generalized anxiety disorder**, and **history of alcohol and marijuana abuse**; (3) none of Rentz's impairments nor any combination of his

impairments meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1; (4) Rentz has a Residual Functional Capacity ("RFC") that encompasses the ability "to perform a full range of work at all exertional levels but with … nonexertional limitations: understanding, remembering, and carrying out detailed but uninvolved written or oral instructions; work duties and any changes must be explained, written and/or demonstrated and could be learned in 30 days or less; and work must not have strict production rates such as assembly line work or hourly time quotas; and occasional interaction with others"; and (5) considering Rentz's age, education, and work experience, he could adjust to available work as, *e.g.*, a laundry laborer, router, and addresser. (*Id.* at 18-25). These determinations at each step of the five-step evaluation led the ALJ to conclude that a "finding of 'not disabled' [was] … appropriate." (*Id.* at 25).

Before this Court, Rentz raises six intermingled arguments challenging the ALJ's decision. In his view, reversal is warranted because:

1. The ALJ failed to "undertak[e] an evaluation of the medical evidence to determine whether the combined effects of Plaintiff's below average intelligence … with his other mental impairments impacts [his] work ability and whether these impairments require additional restrictions" of work-related functions. (Docket No. 9 at 13-14 (citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009))).

2. The ALJ erred in omitting a limitation to one- or two-step tasks from the RFC and from the hypothetical questions he posed to the VE, when such a limitation was supported by medical opinion and prior administrative medical findings evidence produced by Dr. Dante Mancini and Dr. Virginia Martin, whose findings the ALJ found to be "persuasive." (*Id.* at 15-17). Rentz further argues that a one- or two-step tasks limitation is supported by his marked limitation in carrying out detailed instructions (*id.* at 15) and other evidence. At the very least, Rentz argues, the ALJ should have clearly explained why he did not include a one- or two-step tasks limitation.

3. The ALJ failed to account for moderate limitations in Rentz's ability to concentrate, persist, or maintain pace, in the ALJ's hypothetical questions to the VE and in the RFC. (*Id.* at 23).

4. The ALJ failed to adequately address *supportability* and *consistency* in his evaluation of the persuasiveness of certain medical opinions and prior administrative medical findings. Specifically, Rentz faults the ALJ for failing to explain his consideration of consistency for Ms. Gina Lombardi's opinion that, among other things, Rentz has a marked limitation in social interaction. (*Id.* at 24). Rentz also argues that the ALJ failed to consider Dr. Tyler Reinthaler's (Rentz's primary care physician) treatment notes when the ALJ wrote that Dr. Reinthaler's opinions were mere checkmark opinions that lacked a narrative explanation for significant restrictions. (*Id.* at 25-26).

5. The ALJ erred in failing to account for Rentz's emotional support cat as an on-the-job limitation. (*Id.* at 27). Rentz further argues that the ALJ should have, at the very least, explained why he did not include a support animal among Rentz's limitations. (*Id.* at 27-28).

6. The ALJ failed to do a borderline age category analysis when, at the time of the hearing, Rentz was quickly approaching fifty years of age. (*Id.* at 28).

Several principles apply to multiple issues raised by Rentz. "[A]n ALJ must clearly set forth the reasons for his decision." *Diaz*, 577 F.3d at 504. In keeping with that obligation, an ALJ must provide sufficient analysis for the Court to engage in "meaningful judicial review"; but that said, ALJs are not required to "use particular language or adhere to a particular format" in articulating the bases for their

2

disability determinations. *Id.* Assessing a claimant's RFC is the province of the ALJ. *Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).  The ALJ has the opportunity to see "the hearing up close," *Biestek*, 587 U.S. at 108, and evaluate a claimant's testimony alongside the other evidence of record to formulate the RFC.  Therefore, it's not appropriate for a reviewing court to "re-weigh the evidence or impose [its] own factual determinations." *Bruce v. Kijakazi*, No. 3:20-CV-229, 2022 WL 973280, at *1 (W.D. Pa. Mar. 31, 2022) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011)).  This and other courts' role is to ensure there are no legal errors and to determine whether the Commissioner's final decision is supported by substantial evidence, which is defined as "more than a mere scintilla but … somewhat less than a preponderance of the evidence."  *Id.* (quoting *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014)).

Bearing these principles in mind, the Court turns to Rentz's arguments for reversal, however for clarity the Court will address them in a slightly different order than that in which they were raised.  As indicated above, Rentz argues that the ALJ failed to consider the combined effect of his *below average intelligence* and his other impairments.  He cites *Diaz* for support; in *Diaz* the ALJ was found to have erred by failing to consider how the combination of obesity with the plaintiff's other impairments would affect her functional capacity.  577 F.3d at 505 ("Surely the ALJ, having recognized obesity as an impairment, should determine in the first instance whether, and to what extent, Diaz's obesity, in combination with her asthma, diabetes, arthritis, back pain, and hypertension, impacted her workplace performance.").  Critically, Rentz has not pointed to an oversight like that in *Diaz*; rather, in Rentz's record there is little mention of "below average intelligence" that the ALJ can be said to have overlooked.  There is mention in the record of mental status examination data that indicates that Rentz's "cognitive functioning [is] estimated as average to below average." (Docket No. 4-3 at 9).  But in Exhibit 7F – a Physician Report and Mental Impairment Questionnaire completed by Dr. Reinthaler on August 22, 2023 – Dr. Reinthaler responded "No," in response to a question that asked: "Does your patient have a low I.Q. or reduced intellectual functioning?" (Docket No. 4-7 at 134).  For that reason, this case is a much different than *Diaz* where the ALJ found that obesity was among the plaintiff's medically determinable impairments and then failed to consider the combined impact of obesity and other severe impairments in the assessment of her functional capacity.

Rentz's next contention is that the ALJ erred in omitting (especially without explanation) a simple one- or two-step tasks limitation from the RFC when Dr. Mancini and Dr. Martin's findings supported such a limitation, and where the ALJ found Dr. Mancini and Dr. Martin's findings to be persuasive.  Rentz also argues—*briefly*—that limitation to simple one- or two-step tasks is inherently inconsistent with SVP level two jobs that the ALJ ultimately identified for him.  Dr. Mancini indicated in his disability determination explanation that Rentz is "Not Significantly Limited" in his ability to "carry out very short and simple instructions" and included in an additional explanation that Rentz "is able to meet the basic mental demands to complete 1-2 step tasks on a sustained basis despite the limitations resulting from his impairment." (Docket No. 4-3 at 8-9).  Dr. Martin included in her assessment that Rentz is not significantly limited in carrying out "very short and simple instructions" and added in an additional explanation that Rentz can "understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks)." (*Id.* at 25-26).  The ALJ found Dr. Mancini and Mr. Martin's findings to be "persuasive." (Docket No. 4-2 at 24).  In Rentz's view, that creates an unexplained discrepancy between the ALJ's recognition of those findings as persuasive, and the omission of a one- or two-step tasks limitation from the RFC.  However, this Court has repeatedly held that ALJs are not required to accept all medical opinions in formulating an RFC, and the Court has further determined that explanations for RFC findings like the one in this case that are based on "all the evidence" are adequate without more specific rejections of one- or two- step task limitations. *Neubauer v. Comm'r of Soc. Sec.*, No. CV 22-357-E, 2024 WL 150017, at *1 n. 1 (W.D. Pa. Jan. 11, 2024); *Reichenbach v. Comm'r of Soc. Sec.*, No. CV 23-1100, 2024 WL 4336301, at *1 n. 1 (W.D. Pa. Sept. 26, 2024) ("Accordingly, the ALJ's RFC limiting Plaintiff to 'carrying out and remembering simple

instructions,' was not inherently improper because it did not adopt the consultants' language verbatim."). For that reason, the Court finds that the omission of a one- or two-step tasks limitation, and the lack of further explanation of the same, does not undermine the ALJ's decision. Accordingly, there is no basis for the Court to determine that the ALJ's identification of SVP 2 jobs for Rentz was not supported by substantial evidence. *See Buchinsky v. Kijakazi*, No. CV 20-1906, 2022 WL 2987138, at *1 n. 1 (W.D. Pa. July 28, 2022) ("[R]easoning level of 2 does not contradict a restriction to simple, routine, and repetitive tasks[.]"). Moreover, to the extent that Rentz argues that the ALJ's reasoning and findings are inconsistent with marked limitations in carrying out detailed instructions, the ALJ specifically limited Rentz's RFC to include only detailed but uninvolved instructions. (Docket No. 4-3 at 16).

Regarding medical opinion evidence more generally, Rentz argues that the ALJ failed to address supportability and consistency—as he was required to do—when evaluating Ms. Lombardi and Dr. Reinthaler's medical opinions. Ms. Lombardi opined that Rentz is markedly limited in social interaction and Dr. Reinthaler opined, among other things, that Rentz's mental health symptoms are too disabling for him to maintain employment. Rentz argues that those opinions should not have been found unpersuasive by the ALJ and that the ALJ failed to adequately explain *why* he found those opinions to be unpersuasive with reference to "supportability" and "consistency" which are the "most important factors" in evaluating the persuasiveness of medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(a). In this matter, the ALJ explained that he found Ms. Lombardi's opinions that Rentz has "mild, moderate, and marked" mental restrictions to be "not persuasive" because the findings were not supported by Rentz's "mental status examination results" and because the findings were "not consistent with the overall record" of Rentz's "conservative and limited mental health treatment and his functioning." (Docket No. 4-2 at 24). That explanation, read together with the ALJ's decision "as a whole," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), shows that the ALJ adequately explained his bases for finding Ms. Lombardi's opinions to be not persuasive. Earlier in the decision, the ALJ noted that Rentz "shopped in stores," "can count change, handle a savings account, and use a checkbook/money orders," "live[s] alone … [with] no help with cooking and cleaning," and "prepare[s] meals." (Docket No. 4-2 at 21-22). It's clear to the Court that, in light of Rentz's functioning as indicated by his activities, combined with his conservative mental health treatment, the ALJ was unpersuaded to adopt Ms. Lombardi's significant restrictions. (*Id.* at 24). In context of the ALJ's decision as a whole, the ALJ's explanation for his persuasiveness determination is adequate. The same is true of the ALJ's finding that Dr. Reinthaler's opinion was not persuasive. Regarding Dr. Reinthaler's opinions that, among other things, Rentz would "experience excessive absenteeism and various marked and extreme restrictions," the ALJ found such opinions to be unpersuasive because they were largely checkmark opinions and they were "not consistent with the overall record" of Rentz's "conservative and limited mental health treatment and his functioning." (*Id.*). Overall, Dr. Reinthaler opined that Rentz would be unlikely to work on a sustained basis because of his depression symptoms. (Docket No. 4-7 at 134). But there are limited explanations supporting his opined limitations that are noted alongside those opinions. And, regarding consistency, the Court is satisfied that the ALJ adequately considered consistency for the same reasons that the Court is satisfied with the ALJ's consideration of Ms. Lombardi's findings. Dr. Reinthaler's opinions—even with the benefit of his treatment notes and, *e.g.*, PHQ-9 PRO questionnaire scores indicating the severity of Rentz's depression—paint a much bleaker picture of Rentz's abilities than the rest of the record that the ALJ considered when the ALJ found Dr. Reinthaler's opinions to be unpersuasive.

Rentz also argues that the ALJ found that he was limited in his ability to concentrate, persist, and maintain pace, but failed to submit moderate limitations to the vocational expert in that regard. However, as the Commissioner points out, the ALJ included functional limitations in the RFC that reflect limitations in concentration. Specifically, the ALJ limited Rentz to "understanding, remembering, and carrying out detailed but uninvolved written or oral instructions" and indicated that "work must not have strict production rates such as assembly line work or hourly time quotas." (Docket No. 4-2 at 22). The limitations

4

Accordingly, IT IS HEREBY ORDERED that Rentz's Motion for Summary Judgment (Docket No. 8) is <u>DENIED</u> and the Commissioner's Motion for Summary Judgment (Docket No. 12) is <u>GRANTED</u>.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record

---

included in the RFC thus account for Rentz's limitations of concentration, persistence, and pace with an instructions limitation, and with a limitation of pace. *Cf. Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (deciding that the limitations found by the ALJ did not adequately account for the claimant's concentration-persistence-pace deficiencies where jobs identified for the claimant could still have "daily production quotas"). The Court finds no problematic omission from the ALJ's RFC determination and presentation of all necessary limitations to the VE in this regard.

The two last issues raised by Rentz in this matter are arguments that the ALJ erroneously omitted Rentz's emotional support cat from his job limitations, and that the ALJ failed to consider Rentz as a borderline age case. Regarding Rentz's emotional support animal, there is a letter from Dr. Reinthaler in the record indicating to whomever it may concern that Rentz has an emotional support animal—a cat—and asking that Rentz's cat be permitted in his residence. (Docket No. 4-7). There is not significant evidence in the record that Rentz always required his emotional support cat, and Rentz testified to leaving his cat at home when he goes to the grocery store. (Docket No. 4-2 at 42). That the ALJ did not address Rentz's emotional support cat in his decision is immaterial where Rentz has merely pointed to evidence showing that Dr. Reinthaler provided support for Rentz's keeping a cat in his residence and there is no other evidence that would show Rentz's cat was "medically necessary." *Tiffany B. v. Kijakazi*, No. 120CV02696DLPJMS, 2022 WL 224817, at *6 (S.D. Ind. Jan. 26, 2022) ("Because Plaintiff points to no evidence in the record that says that an emotional support animal was medically necessary or required for Tiffany to work, the Court finds that the ALJ's failure to include the use of a companion animal in the RFC analysis was harmless."); *Pfleger v. Comm'r of Soc. Sec.*, No. CV 20-10757, 2022 WL 577967, at *7 n. 4 (D.N.J. Feb. 25, 2022). With respect to the borderline age issue, the Court first notes that the ALJ in this matter "did not merely rely upon the Grids in determining that [Rentz] was not disabled"; rather "he ultimately relied on the testimony of a VE in making his determination" and relied specifically on the VE's testimony considering Rentz's "actual age and all of his limitations." *Holland v. Comm'r of Soc. Sec.*, No. CIV.A. 10-1019, 2012 WL 11052, at *1 (W.D. Pa. Jan. 3, 2012). Additionally, the Court notes that Rentz has no exertional limitations. (Docket No. 4-2 at 22). Because of that, applying the next highest age category through a borderline age analysis would not have made a difference in this case. *Thomas v. Saul*, No. CV 20-1604, 2021 WL 4429431, at *1 at n. 2 (W.D. Pa. Sept. 27, 2021). For this and the foregoing reasons, this Court is satisfied that the ALJ's decision is supported by substantial evidence and free from legal error.

5